FILED
CHARLOTTE, NC

JUN - 1 2026

US DISTRICT COURT
WESTERN DISTRICT OF NC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### {CHARLOTTE DIVISION}

NA'EEM OMAR BETZ,

Civil Action No. 3:26-cv-426-KDB

Plaintiff,

v.

**COMPLAINT AND DEMAND FOR JURY TRIAL (12 JURORS)**

SHEPHERD OUTSOURCING, LLC.,
and
CROWN ASSET MANAGEMENT, LLC.

Defendants.

### ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Na'eem Omar Betz ('Plaintiff'), proceeding *('Pro Se')*, unless and until counsel appears, brings this civil action against Shepherd Outsourcing, LLC ('Shepherd'), Crown Asset Management, LLC ('CAM'), and Tilt Card, Inc. f/k/a Petal Card, Inc. ('Tilt/Petal') (collectively, 'Defendants'), and alleges as follows. Allegations made on information and belief are so pleaded because the relevant account-level sale files, placement records, collection notes, and validation records are in Defendants' possession.

### I. NATURE OF THE ACTION

1. This is an individual consumer-protection action arising from Defendants' collection, attempted collection, assignment, sale, and documentation of an alleged charged-off WebBank/Petal credit-card debt claimed to be owed by Plaintiff in the amount of $1,381.27.

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL
**1**

2. The core collection communication is a March 11, 2026 Shepherd letter mailed to Plaintiff at 1905 Taylor Avenue, Charlotte, North Carolina 28216. The letter identifies WebBank as the 'Original Creditor,' Crown as the 'Current Creditor,' lists 'Original Account #: XXXX8035,' states an 'Account Balance: $1,381.27,' and expressly states: 'This is an attempt to collect a debt. Any information obtained will be used for that purpose.' See Compl. Ex. C.

3. The Shepherd letter also says: 'Thank you for your recent contact concerning your account placed with Shepherd Outsourcing,' thereby showing that Shepherd was acting as Crown's collection agent or servicer for a debt Crown allegedly owned. See Compl. Ex. C.

4. On its face, the March 11, 2026 Shepherd letter does not contain the validation notice required by the Fair Debt Collection Practices Act ('FDCPA'), 15 U.S.C. § 1692g(a), and Regulation F, 12 C.F.R. § 1006.34. Among other omissions, it does not state Plaintiff's 30-day dispute rights, does not provide the required validation-period end date, does not provide an itemization date, does not itemize interest, fees, payments, credits, or adjustments, and does not provide the required dispute/request-for-original-creditor statements.

5. The collection packet also fails to provide account-specific proof that Plaintiff's alleged account was included in the sale to Crown. Instead, the bill-of-sale materials refer to an external electronic schedule identified as 'LOT25-842_TILTFINANCE_CROWN_FINAL DATA.XLSX,' which is not attached in account-level form to the documents Plaintiff has received. See Compl. Ex. C.

6. The Petal/Tilt transfer email states that Petal sold an account ending 8035 to Crown on August 28, 2025, that the charge-off date was July 28, 2025, and that the amount owed at

charge-off was $1,381.27. See Compl. Exs. A-B. The full monthly statements presently available to Plaintiff end with the January 1-31, 2025 billing cycle, showing a new balance of $898.88. See Compl. Ex. C. The materials do not provide a complete itemization explaining the approximately $482.39 increase between that January 2025 statement balance and the July 28, 2025 charge-off balance.

7. This action seeks statutory damages, actual damages, North Carolina civil penalties, declaratory relief where available, costs, attorney's fees where authorized, and all other relief permitted by law.

## II. PARTIES

8. Plaintiff Na'eem Omar Betz is a natural person and consumer who resides in Charlotte, Mecklenburg County, North Carolina. Plaintiff's current address, as reflected in the March 5, 2026 dispute letters and the March 11, 2026 Shepherd collection letter, is 1905 Taylor Avenue, Charlotte, North Carolina 28216-4547. See Compl. Exs. A-C.

9. Plaintiff is a 'consumer' within the meaning of the FDCPA, 15 U.S.C. § 1692a(3), the North Carolina debt-collection statutes, and North Carolina consumer-protection law.

10. The alleged obligation concerns a Petal 1 Rise VISA credit-card account issued by WebBank and serviced by Petal Card, Inc. The alleged debt arose, if at all, from transactions for personal, family, or household purposes and therefore is a 'debt' within the meaning of 15 U.S.C. § 1692a(5) and a consumer debt under North Carolina law.

11. Defendant Shepherd Outsourcing, LLC is a debt-collection company that sent the March 11, 2026 collection letter to Plaintiff in Charlotte, North Carolina. The letter uses a P.O. Box in Greenville, South Carolina, identifies a main office at 777 Lowndes Hill Road, Building 1, Greenville, South Carolina 29607, lists North Carolina Permit No. 521637981,

and identifies a Panama Branch Office with North Carolina License No. 524197821. See Compl. Ex. C.

12.  Shepherd represented in writing that it was a 'debt collector' and a 'professional debt collection agency.' See Compl. Ex. C. Shepherd is a 'debt collector' under 15 U.S.C. § 1692a(6) and a 'collection agency' under N.C. Gen. Stat. Chapter 58, Article 70.

13.  Defendant Crown Asset Management, LLC is a debt buyer and collection entity with an address shown in the documents as 3100 Breckinridge Boulevard, Suite 725, Duluth, Georgia 30096. See Compl. Exs. A-C.

14.  Crown is alleged to have purchased Plaintiff's charged-off WebBank/Petal account from Tilt/Petal on August 28, 2025. See Compl. Exs. A-C. Crown is a 'debt buyer' and 'collection agency' within the meaning of N.C. Gen. Stat. § 58-70-15, and is a 'debt collector' under the FDCPA because its principal business purpose is the purchase and liquidation of defaulted consumer receivables, directly or through agents, including Shepherd.

15.  Crown is directly liable for its own acts and omissions and vicariously liable for Shepherd's acts and omissions because Shepherd collected or attempted to collect the alleged debt for Crown, at Crown's placement, for Crown's benefit, and within the scope of Shepherd's actual, apparent, or implied authority.

16.  Defendant Tilt Card, Inc. f/k/a Petal Card, Inc. is the entity that, according to the documents, serviced the WebBank/Petal credit-card account, sent or caused to be sent the August 28, 2025 'Transfer of Account Ownership' email, acquired accounts from WebBank, and sold or assigned accounts to Crown. See Compl. Exs. A-C.

17. The uploaded documents include a Delaware certificate stating that Petal Card, Inc. changed its name to Tilt Card, Inc. effective July 31, 2025. See Compl. Ex. C. For clarity, this Complaint refers to that entity as 'Tilt/Petal.'

18. Tilt/Petal is named for its direct role in transmitting account data, representing the amount and ownership status of the account, identifying the account as ending 8035, stating that all ownership rights and the right to payment belonged to Crown, and directing Plaintiff to Crown for questions and payments. See Compl. Exs. A-B.

### III. JURISDICTION AND VENUE

19. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action includes claims under the FDCPA, 15 U.S.C. §§ 1692 et seq.

20. This Court also has jurisdiction over FDCPA claims under 15 U.S.C. § 1692k(d), which permits actions to enforce FDCPA liability in an appropriate United States district court without regard to the amount in controversy.

21. This Court has supplemental jurisdiction over Plaintiff's North Carolina statutory and common-law claims under 28 U.S.C. § 1367 because those claims arise from the same transactions, communications, collection conduct, account sale, and alleged debt.

22. Venue is proper in the Western District of North Carolina under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District, including the mailing of Shepherd's March 11, 2026 collection letter to Plaintiff's Charlotte, North Carolina address, Plaintiff's receipt and review of collection communications in this District, Plaintiff's dispute activity from this District, and Plaintiff's resulting injuries in this District.

23. This action is properly filed in the Charlotte Division because Plaintiff resides in Charlotte, Mecklenburg County, North Carolina, and the collection letter at issue was directed to Charlotte.

24. Defendants are subject to personal jurisdiction in North Carolina because they purposefully directed collection activity, account communications, and debt-related records to Plaintiff in North Carolina, asserted rights to collect from a North Carolina consumer, and caused injury in North Carolina.

## IV. EXHIBITS REFERENCED IN THIS COMPLAINT

25. Complaint Exhibit A is Plaintiff's March 5, 2026 formal dispute letter to Crown, including the enclosed August 28, 2025 Petal/Tilt 'Transfer of Account Ownership' email.

26. Complaint Exhibit B is Plaintiff's March 5, 2026 formal dispute and preservation notice to Petal/Tilt, including the enclosed August 28, 2025 Petal/Tilt 'Transfer of Account Ownership' email.

27. Complaint Exhibit C is the Shepherd Outsourcing debt-collection notice packet and supporting documents, including the March 11, 2026 Shepherd collection letter, Petal statements, account documents, sale/assignment documents, Crown notice-of-assignment materials, and the Delaware name-change certificate for Petal/Tilt.

28. Plaintiff incorporates the attached exhibits by reference under Federal Rule of Civil Procedure 10(c). To the extent any exhibit contains a statement by a Defendant or its agent, Plaintiff pleads that statement as a party or agent admission and as evidence of what the communication conveyed to a reasonable consumer. Plaintiff does not adopt any Defendant's legal conclusion or debt-validity assertion merely by attaching or referencing the exhibit.

# V. FACTUAL ALLEGATIONS

## A. The alleged WebBank/Petal account and account identifiers

29. The relevant account was described in Petal statements as a Petal 1 Rise VISA credit-card account issued by WebBank and serviced by Petal Card, Inc. See Compl. Ex. C.

30. The Petal statements identify the plastic card as ending in 0199 and separately identify a Card Reference Number of 325053648035. See Compl. Ex. C.

31. The later transfer, assignment, and collection materials identify the account as ending in 8035. See Compl. Exs. A-C.

32. The documents do not clearly explain to Plaintiff that the '8035' number used by Petal, Crown, and Shepherd corresponds to the end of the Card Reference Number, rather than the card number ending 0199 shown prominently on the Petal account statements.

33. The inconsistent or unexplained account-number convention was material because it made it more difficult for Plaintiff to determine whether the alleged debt being collected was tied to the same account shown on the monthly statements, and whether the collector and debt buyer had account-level proof of ownership.

## B. Statement history presently available to Plaintiff

34. The statements presently available in the collection packet show zero balances for the June, July, and August 2024 billing cycles. See Compl. Ex. C.

35. For the September 1-30, 2024 billing cycle, the statement shows a new balance of $421.92 based on purchases and a purchase return. See Compl. Ex. C.

36. For the October 1-31, 2024 billing cycle, the statement shows a new balance of $722.16, including payments of $30.00, purchases of $311.07, and interest charged of $19.17. See Compl. Ex. C.

37. For the November 1-30, 2024 billing cycle, the statement shows a new balance of $712.51, including a $30.00 payment and $20.35 in interest charged. See Compl. Ex. C.

38. For the December 1-31, 2024 billing cycle, the statement shows a new balance of $774.34, including a $30.00 payment, purchases of $71.22, and interest charged of $20.61. See Compl. Ex. C.

39. For the January 1-31, 2025 billing cycle, the statement shows a new balance of $898.88, a minimum payment due of $89.01, a past-due amount of $28.15, purchases and adjustments of $71.86, interest charged of $24.53, and a late payment fee of $28.15. See Compl. Ex. C.

40. The collection packet presently available to Plaintiff does not include a complete statement-by-statement itemization from February 1, 2025 through the July 28, 2025 charge-off date.

41. The August 28, 2025 Petal/Tilt transfer email says the amount owed at charge-off on July 28, 2025 was $1,381.27. See Compl. Exs. A-B.

42. The difference between the January 2025 statement balance of $898.88 and the July 28, 2025 charge-off amount of $1,381.27 is approximately $482.39. Defendants have not provided Plaintiff with a complete itemization explaining that increase.

## C. The Petal/Tilt transfer email and sale to Crown

43. On or about August 28, 2025, Petal/Tilt sent Plaintiff an email titled 'Transfer of Account Ownership.' See Compl. Exs. A-B.

44. The Petal/Tilt transfer email identifies Plaintiff as 'NAEEM BETZ,' lists an address in Jacksonville, Florida, identifies 'Account Number (Last four digits) at time of Charge Off: 8035,' names WebBank as the original creditor, names Petal as the creditor at time of sale, identifies an amount owed at charge-off of $1,381.27, and states that a transaction reflecting

purchase, payment, or other account use was $18.87 on January 16, 2025. See Compl. Exs. A-B.

45. The Petal/Tilt transfer email states that Petal Card Inc. sold the account with an outstanding balance of $1,381.27 to Crown Asset Management, LLC on August 28, 2025. See Compl. Exs. A-B.

46. The Petal/Tilt transfer email states: 'All ownership rights to your account, including the right to payment now belong to Crown Asset Management, LLC.' See Compl. Exs. A-B.

47. The Petal/Tilt transfer email instructs that questions concerning the specific account should be directed to Crown and that payments should be made payable to Crown and mailed to Crown. See Compl. Exs. A-B.

48. The Petal/Tilt transfer email ends with 'Thank you, Petal Card Inc.' but also displays '© 2025 Tilt Card, Inc.' and lists an Atlanta mailing address. See Compl. Exs. A-B.

49. Because the same notice uses the names Petal Card Inc. and Tilt Card, Inc., and because the later Delaware certificate reflects a name change from Petal Card, Inc. to Tilt Card, Inc., the notice created confusion as to the precise legal identity of the entity making representations about the account and sale. See Compl. Exs. A-C.

**D. The sale and assignment documents do not provide account-specific proof to Plaintiff**

50. The documents presently available to Plaintiff include an August 28, 2025 bill of sale from WebBank to Tilt Card, Inc. See Compl. Ex. C.

51. The WebBank-to-Tilt bill of sale states that WebBank sold and assigned accounts identified in an attached 'Exhibit A,' but the account-level data showing Plaintiff's specific account in that exhibit has not been provided to Plaintiff in the materials available to him. See Compl. Ex. C.

52. The documents also include an August 28, 2025 bill of sale and assignment of accounts from Tilt Card, Inc. to Crown. See Compl. Ex. C.

53. The Tilt-to-Crown bill of sale states that Tilt sold accounts identified in the account schedule attached as 'Schedule 1.' See Compl. Ex. C.

54. Instead of providing an account-level schedule identifying Plaintiff's account, Schedule 1 states: 'REFER TO LOT25-842_TILTFINANCE_CROWN_FINAL DATA.XLSX.' See Compl. Ex. C.

55. No copy of the specific Excel row, data field extract, or account-level schedule connecting Plaintiff's alleged account to Crown's purchase appears in the materials Plaintiff presently has. See Compl. Ex. C.

56. On information and belief, Crown and Shepherd either did not possess, did not review, or did not provide account-specific documentation sufficient to establish Crown's ownership and the amount allegedly owed before Shepherd attempted to collect from Plaintiff in North Carolina.

**E. Crown notice-of-assignment materials**

57. The materials include a Crown 'NOTICE OF SALE AND ASSIGNMENT' dated September 29, 2025, addressed to Plaintiff at a Jacksonville, Florida address. See Compl. Ex. C.

58. The Crown notice states that, pursuant to Florida Statute § 559.715, Crown purchased an account ending 8035 that originated with WebBank. See Compl. Ex. C.

59. The Crown notice states: 'This is not an attempt to collect a debt' and 'This is a Notice of Assignment in accordance with Florida statute § 559.715.' See Compl. Ex. C.

60. The Crown notice identifies a file number, 1869P002506371, account number ending 8035, original creditor WebBank, and account type 'Empower Petal Card.' See Compl. Ex. C.

61. The Crown notice did not include the account-level Schedule 1 Excel data or itemized accounting necessary for Plaintiff to evaluate ownership and balance.

**F. Plaintiff's March 5, 2026 dispute to Crown**

62. On or about March 5, 2026, Plaintiff sent Crown a formal written notice disputing the alleged debt in full, requesting validation, requesting ownership proof and chain-of-title documents, requesting a complete itemization, asking whether interest or fees were accruing, demanding cessation of collection pending validation, providing credit-reporting accuracy notice, restricting communications to writing, and preserving evidence. See Compl. Ex. A.

63. Plaintiff's March 5, 2026 Crown dispute letter states that Plaintiff is a North Carolina consumer and that, other than the Petal/Tilt transfer email, Plaintiff had not received any direct written communication from Crown. See Compl. Ex. A.

64. Plaintiff requested complete ownership and chain-of-title documentation, including the master bill of sale, purchase-and-sale agreement, assignments, schedules, exhibits, or account-level data records connecting account ending 8035 to the portfolio Crown claimed to own. See Compl. Ex. A.

65. Plaintiff also requested a complete itemization of principal, interest, fees, and other charges, and documents showing how the stated balance was calculated. See Compl. Ex. A.

66. Plaintiff told Crown to communicate only in writing by mail or email and stated that Plaintiff did not consent to telephone calls or text messages. See Compl. Ex. A.

Case 3:26-cv-00426-KDB-WCM    Document 1    Filed 06/01/26    Page 11 of 24

67. Plaintiff's March 5, 2026 Crown dispute letter put Crown on notice that Plaintiff disputed the debt and required validation and account-specific ownership proof before collection continued. See Compl. Ex. A.

**G. Plaintiff's March 5, 2026 dispute and preservation notice to Tilt/Petal**

68. On or about March 5, 2026, Plaintiff sent Petal/Tilt a formal dispute and preservation demand concerning the same alleged debt and the August 28, 2025 transfer email. See Compl. Ex. B.

69. Plaintiff's Petal/Tilt letter requested transfer and sale records, account-level data fields transmitted, representations and warranties concerning data accuracy, account history supporting the charge-off amount, cardholder agreements, credit-reporting information, and preservation of call logs, servicing records, notes, and credit-reporting records. See Compl. Ex. B.

70. Plaintiff also gave Petal/Tilt notice of agency and vicarious-liability theories if Petal, WebBank, Tilt, or any affiliate directed, authorized, controlled, assisted, or materially participated in placement, collection activity, credit reporting, or communications related to Crown's collection of the account. See Compl. Ex. B.

71. Plaintiff told Petal/Tilt to respond only in writing by mail or email and stated that Plaintiff did not consent to telephone calls or text messages. See Compl. Ex. B.

**H. Shepherd's March 11, 2026 collection letter**

72. On March 11, 2026, after Plaintiff's March 5, 2026 written dispute to Crown, Shepherd sent Plaintiff a collection letter at 1905 Taylor Avenue, Charlotte, North Carolina 28216. See Compl. Ex. C.

73. The Shepherd letter identifies WebBank as the original creditor, Crown as the current creditor, SO Reference No. 1008210636, Client Reference No. 1869P002506371, and account balance of $1,381.27. See Compl. Ex. C.

74. The Shepherd letter states: 'Thank you for your recent contact concerning your account placed with Shepherd Outsourcing.' See Compl. Ex. C.

75. Plaintiff had sent his dispute to Crown on or about March 5, 2026. On information and belief, Crown forwarded, placed, assigned, or otherwise caused Plaintiff's account and/or dispute to be handled by Shepherd after Crown had notice that Plaintiff disputed the alleged debt.

76. The Shepherd letter states: 'This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication was sent by a debt collector from a professional debt collection agency.' See Compl. Ex. C.

77. The Shepherd letter does not contain the validation notice required by 15 U.S.C. § 1692g(a). It does not state that the debt will be assumed valid unless Plaintiff disputes it within 30 days; does not state that, if Plaintiff disputes the debt in writing within 30 days, the collector will obtain verification and mail it to him; and does not state that, upon written request within 30 days, the collector will provide the name and address of the original creditor if different from the current creditor.

78. The Shepherd letter does not contain the validation information required by Regulation F, 12 C.F.R. § 1006.34(c), including an itemization date, amount of debt on the itemization date, itemized interest, fees, payments, credits, current amount of the debt, validation-period end date, or consumer-response information.

79. The Shepherd letter did not provide a complete itemized accounting, charge-off accounting, account-level ownership schedule, or copy of the agreement or account document establishing the debt.

80. The reverse side of the Shepherd letter lists a North Carolina permit number and a Panama branch office with a North Carolina license number. See Compl. Ex. C. That disclosure demonstrates that Shepherd knew or should have known it was engaging in regulated North Carolina debt-collection activity.

81. The Shepherd letter did not state that collection would cease pending validation or that Crown had already received Plaintiff's written dispute.

## I. Injury, standing, and damages

82. Defendants' conduct caused Plaintiff concrete harm, including informational injury from the failure to receive mandatory validation information, confusion over the identity of the account and account number, uncertainty over whether Crown owned the specific account, uncertainty over whether the amount demanded was authorized and itemized, and the risk of paying the wrong entity or paying an unverified amount.

83. Plaintiff spent time and resources reviewing the confusing account materials, drafting dispute and preservation letters, sending certified-mail and email disputes, researching his rights, organizing documents, and attempting to determine whether Crown and Shepherd had lawful authority to collect.

84. Plaintiff suffered stress, anxiety, frustration, and loss of peace from receiving a collection letter in North Carolina demanding $1,381.27 after he had disputed the alleged debt and requested validation from Crown.

85. Plaintiff incurred out-of-pocket costs, including postage, copying, certified-mail costs, and related dispute costs, in attempting to protect his rights and prevent collection of an unverified alleged debt.

86. The injuries described above are fairly traceable to Defendants' conduct and are redressable by statutory damages, actual damages, civil penalties, costs, fees where authorized, and declaratory relief where available.

## VI. CAUSES OF ACTION

### COUNT I
### FDCPA: FAILURE TO PROVIDE VALIDATION NOTICE AND VALIDATION INFORMATION
### 15 U.S.C. § 1692g(a); 12 C.F.R. § 1006.34
### Against Shepherd and Crown

87. Plaintiff incorporates all preceding paragraphs as if fully set forth here.

88. Shepherd is a debt collector under the FDCPA because it regularly collects or attempts to collect debts owed or allegedly owed to others and because it expressly represented itself as a professional debt collection agency collecting a debt. See Compl. Ex. C.

89. Crown is a debt collector under the FDCPA because, on information and belief, Crown's principal business purpose is the purchase and liquidation of charged-off consumer debts, including by placing accounts with third-party collection agencies such as Shepherd. Crown also acted through Shepherd, its collection agent.

90. The March 11, 2026 Shepherd letter was an initial communication or, at minimum, a debt-collection communication requiring a compliant FDCPA and Regulation F validation notice in the initial communication or within five days thereafter, unless a compliant notice had already been provided.

91. Plaintiff did not receive a compliant FDCPA/Regulation F validation notice from Shepherd with the March 11, 2026 communication.

92. Plaintiff did not receive a separate compliant FDCPA/Regulation F validation notice from Shepherd within five days after the March 11, 2026 communication.

93. The Shepherd letter omitted the required 15 U.S.C. § 1692g(a) disclosures and the required 12 C.F.R. § 1006.34 validation information, including dispute rights, verification rights, original-creditor request rights, itemization date, itemized interest/fees/payments/credits, current amount, validation-period end date, and consumer-response information.

94. Shepherd's failure to provide required validation information was material because it deprived Plaintiff of information Congress and the CFPB require debt collectors to provide so consumers may evaluate, dispute, and verify alleged debts.

95. Crown is vicariously liable because Shepherd sent the letter for Crown's benefit, on Crown's account, with Crown identified as the current creditor, using Crown's client reference number, and within the scope of Shepherd's agency or collection authority.

96. By the conduct alleged above, Shepherd and Crown violated 15 U.S.C. § 1692g(a) and Regulation F, 12 C.F.R. § 1006.34.

## COUNT II
## FDCPA: FALSE, DECEPTIVE, MISLEADING, AND UNFAIR COLLECTION CONDUCT
## <u>15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692f(1)</u>
### Against Shepherd and Crown

97. Plaintiff incorporates all preceding paragraphs as if fully set forth here.

98. The FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of a debt, including falsely

representing the character, amount, or legal status of a debt, and using deceptive means to collect or attempt to collect a debt. 15 U.S.C. § 1692e, § 1692e(2)(A), § 1692e(10).

99. The FDCPA also prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt, including the collection of any amount unless the amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f, § 1692f(1).

100. Shepherd and Crown represented that Plaintiff owed $1,381.27, but they did not provide a complete itemization explaining how the balance was calculated, whether any post-charge-off interest or fees were included, and whether the full amount was authorized by the agreement and permitted by law. See Compl. Ex. C.

101. Shepherd and Crown identified the account as XXXX8035 without clearly explaining that Petal statements identified the card ending as 0199 and separately identified a card reference number ending 8035. See Compl. Ex. C.

102. Shepherd and Crown attempted to collect after Plaintiff had disputed the alleged debt to Crown and demanded validation, without providing account-level chain-of-title proof or a complete itemized accounting. See Compl. Exs. A-C.

103. The documents available to Plaintiff do not include the account-specific Schedule 1 data or the Excel file row that would connect Plaintiff's alleged account to Crown's purchase. See Compl. Ex. C.

104. A least sophisticated consumer receiving the Shepherd letter would reasonably believe Crown and Shepherd had already verified the debt, verified Crown's ownership, and verified the exact balance, when the documents provided to Plaintiff did not establish those facts.

105. The omissions and ambiguities were material because they affected Plaintiff's ability to evaluate whether to pay, dispute, request validation, preserve defenses, or challenge ownership and amount.

106. Crown is directly liable for its own collection conduct and vicariously liable for Shepherd's conduct as Crown's collection agent.

107. By the conduct alleged above, Shepherd and Crown violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692f(1).

## COUNT III
## NORTH CAROLINA COLLECTION AGENCY ACT
### N.C. GEN. STAT. §§ 58-70-15, 58-70-90, 58-70-110, 58-70-115, AND 58-70-130
### Against Shepherd and Crown

108. Plaintiff incorporates all preceding paragraphs as if fully set forth here.

109. Shepherd is a collection agency engaged in debt collection from a North Carolina consumer and represented itself as a professional debt collection agency. See Compl. Ex. C.

110. Crown is a debt buyer and collection agency under N.C. Gen. Stat. § 58-70-15 because it allegedly purchased a delinquent or charged-off consumer credit-card account for collection purposes, whether by collecting itself or by hiring Shepherd for collection.

111. N.C. Gen. Stat. § 58-70-115 prohibits a collection agency from using unfair practices. Subsection (5) prohibits a debt buyer, or a collection agency acting on behalf of a debt buyer, from attempting to collect a debt without valid documentation that the debt buyer owns the specific account at issue and reasonable verification of the amount of the debt allegedly owed.

112. For charged-off debt, N.C. Gen. Stat. § 58-70-90 defines an itemized accounting to include the charge-off balance, post-charge-off interest and fees, post-charge-off payments or

credits, and the most recent account statements sent to the debtor before charge-off as required by the statute.

113. Crown and Shepherd attempted to collect or caused collection of a charged-off debt in North Carolina without providing Plaintiff valid account-specific documentation that Crown owned Plaintiff's specific account and without providing a reasonable verification and itemized accounting of the $1,381.27 amount demanded.

114. The sale documents provided to Plaintiff do not include the account-level Schedule 1 or the referenced Excel file row. See Compl. Ex. C.

115. The collection documents provided to Plaintiff do not include a complete itemization from the January 2025 $898.88 statement balance to the July 28, 2025 $1,381.27 charge-off amount. See Compl. Ex. C.

116. The collection documents provided to Plaintiff do not show whether any interest, fees, payments, credits, adjustments, or post-charge-off amounts were included in the balance Shepherd attempted to collect.

117. N.C. Gen. Stat. § 58-70-110 prohibits deceptive representations by collection agencies, including false or misleading representations concerning the character, extent, amount, or legal status of a debt or the creditor's rights or intentions.

118. By demanding payment of $1,381.27 without providing account-specific ownership documentation and itemized accounting, and by using unexplained account identifiers, Shepherd and Crown used unfair, deceptive, and misleading collection practices in violation of N.C. Gen. Stat. §§ 58-70-110 and 58-70-115.

119. Under N.C. Gen. Stat. § 58-70-130, violations of Part 3 of Article 70 subject a collection agency to actual damages and a civil penalty of not less than $500 and not more than

$4,000 for each violation, and the statutory provisions constitute unfair or deceptive acts or practices.

120. Plaintiff is entitled to actual damages, statutory civil penalties, and all other relief allowed by N.C. Gen. Stat. § 58-70-130.

## COUNT IV
## NORTH CAROLINA DEBT COLLECTION ACT AND UDTPA
## N.C. GEN. STAT. §§ 75-50, 75-54, 75-55, 75-56, 75-1.1, AND 75-16
### Against Tilt/Petal and, in the Alternative, Any Defendant Not Subject to Chapter 58, Article 70

121. Plaintiff incorporates all preceding paragraphs as if fully set forth here.

122. This count is pleaded against Tilt/Petal and, in the alternative, against any Defendant that contends it is not subject to N.C. Gen. Stat. Chapter 58, Article 70.

123. N.C. Gen. Stat. § 75-50 defines 'debt' as any obligation owed, due, or alleged to be owed or due from a consumer and defines 'debt collector' as any person engaging, directly or indirectly, in debt collection from a consumer, except those subject to Article 70, Chapter 58.

124. Tilt/Petal engaged directly or indirectly in debt collection when it sent or caused to be sent the August 28, 2025 transfer email asserting that $1,381.27 was owed, stating Crown had all ownership rights and the right to payment, directing Plaintiff's questions to Crown, and directing payments to Crown. See Compl. Exs. A-B.

125. Tilt/Petal represented that Crown owned all rights to payment and that $1,381.27 was owed, while failing to provide Plaintiff with the account-level transfer data, itemized accounting, and clear explanation of the account identifier necessary to evaluate those representations. See Compl. Exs. A-C.

126. Tilt/Petal's transfer email used both the name 'Petal Card Inc.' and 'Tilt Card, Inc.,' while the legal name change occurred shortly before the alleged sale, creating confusion about the identity and authority of the party making the transfer and balance representations. See Compl. Exs. A-C.

127. Tilt/Petal identified the account as ending 8035, while the Petal statements identified the card ending 0199 and the card reference number 325053648035, without explaining the distinction. See Compl. Exs. A-C.

128. On information and belief, Tilt/Petal transmitted, sold, or facilitated the collection of incomplete, confusing, inaccurate, or inadequately documented account data to Crown, and Crown and Shepherd relied on that data in attempting to collect from Plaintiff.

129. N.C. Gen. Stat. § 75-54 prohibits fraudulent, deceptive, or misleading representations in collecting or attempting to collect a debt or obtaining information concerning a consumer. N.C. Gen. Stat. § 75-55 prohibits unconscionable means in collecting or attempting to collect a debt.

130. The conduct alleged above constituted deceptive, misleading, unfair, or unconscionable debt-collection conduct under N.C. Gen. Stat. §§ 75-54 and 75-55 and an unfair or deceptive act or practice under N.C. Gen. Stat. §§ 75-1.1 and 75-56.

131. Plaintiff was injured by the unfair and deceptive conduct, including by having to dispute, investigate, preserve records, and respond to collection activity based on confusing and inadequately documented transfer and balance representations.

132. Plaintiff is entitled to actual damages, treble damages where available, costs, attorney's fees where authorized, and all other relief permitted by North Carolina law.

**COUNT V**
**DECLARATORY RELIEF**
**28 U.S.C. §§ 2201-2202**
**Against All Defendants**

133. Plaintiff incorporates all preceding paragraphs as if fully set forth here.

134. An actual controversy exists concerning whether Crown owns Plaintiff's specific account, whether Defendants possess account-specific documentation sufficient to establish ownership, whether the $1,381.27 balance is properly itemized and authorized, whether Defendants may continue collection without providing validation and reasonable verification, and whether Defendants' conduct violated federal and North Carolina consumer-protection law.

135. Plaintiff seeks a declaration, to the extent permitted by law, that Defendants may not lawfully collect or attempt to collect from Plaintiff unless and until they possess and provide account-specific ownership documentation and a complete itemized accounting sufficient to verify the alleged debt and amount.

136. Plaintiff seeks a declaration that Shepherd's March 11, 2026 letter failed to provide the validation notice and validation information required by the FDCPA and Regulation F.

137. Plaintiff seeks all additional declaratory and equitable relief the Court deems proper and legally available.

**VII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendants, jointly and severally where permitted, and award the following relief:

- Actual damages in an amount to be determined at trial;
- FDCPA statutory damages under 15 U.S.C. § 1692k(a)(2)(A);
- Costs of this action and reasonable attorney's fees where authorized by 15 U.S.C. § 1692k(a)(3) and other applicable law;

ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL
22

- Civil penalties under N.C. Gen. Stat. § 58-70-130 for each proven violation of the North Carolina Collection Agency Act;
- Actual damages and treble damages where available under N.C. Gen. Stat. §§ 75-1.1, 75-16, and 75-56;
- Declaratory relief under 28 U.S.C. §§ 2201-2202;
- Prejudgment and post-judgment interest as allowed by law;
- Such equitable relief as the Court determines is legally available and appropriate; and
- All other relief the Court deems just and proper.

## VIII. JURY DEMAND

138. Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil

Procedure 38 and the Seventh Amendment to the United States Constitution.

## IX. EXHIBIT INDEX FOR FILING

| Complaint Exhibit | Description | Source file to attach |
|---|---|---|
| Exhibit A | March 5, 2026 formal dispute letter to Crown Asset Management, LLC, including the Petal/Tilt 'Transfer of Account Ownership' email. | EXHIBIT A _Crown_Dispute_Letter_NA_EEM_OMAR_BETZ.pdf |
| Exhibit B | March 5, 2026 formal dispute and preservation notice to Petal/Tilt, including the Petal/Tilt 'Transfer of Account Ownership' email. | EXHIBIT B _Petal_Dispute_Notice_NA_EEM_OMAR_BETZ.pdf |
| Exhibit C | Shepherd Outsourcing debt-collection notice packet, including the March 11, 2026 Shepherd letter, account statements, transfer/sale documents, Crown notice, and Petal-to-Tilt name-change certificate. | EXHIBIT C_SHEPHERD OUTSOURCING_DEBT COLLECTION NOTICES_DOCUMENTS.pdf |

Respectfully submitted,

Date: May 25th, 2026

x _____

NA'EEM OMAR BETZ *Na'eem Omar Betz*
1905 Taylor Avenue
Charlotte, NC 28216-4547
Email: nobetzo@gmail.com
Phone: (202) 706-8063
*Plaintiff, Pro Se,*
ALL RIGHTS RESERVED

## CERTIFICATE OF SERVICE

I certify that, after filing, I will serve a copy of this Complaint and summons on each Defendant

in the manner required by Federal Rule of Civil Procedure 4. This certificate should be updated

after service is completed.

SHEPHERD OUTSOURCING, LLC.
777 Lowndes Hill Road Building #1, 1st Floor
Greenville, South Carolina, 29607
                    *Defendants*

Registered agent: Northwest Registered Agent Service, Inc.

Registered Office address: 4030 Wake Forest Road, Ste 349 Raleigh, NC, 27609

Crown Asset Management, LLC.
3100 Breckinridge Blvd., Ste. # 725
Duluth, Georgia, 30096-7605
                    *Defendants*

Registered agent: CT Corporation System

Registered Office address: 160 Mine Lake Ct Ste 200 Raleigh, NC, 27615-6417

Date: May 25th, 2026

x _____

NA'EEM OMAR BETZ *Na'eem Omar Betz*
*Plaintiff, Pro Se,*
*ALL RIGHTS RESERVED*